Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
Andrew J. Somers, #19078
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com
andrew@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS B., and T.B.,<br><br>        Plaintiffs,<br>vs.<br><br>AETNA LIFE INSURANCE COMPANY, and the DEUTSCHE BANK MEDICAL PLAN,<br>        Defendants. | OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:21-cv-00142 - DBP<br><br>Chief Magistrate Judge Dustin B. Pead |

Plaintiffs Thomas B. and T.B., through their undersigned counsel, file their opposition memorandum to Defendants Aetna Life Insurance Company ("Aetna") and the Deutsche Bank Medical Plan's (the "Plan") motion for summary judgment.

**OVERVIEW**

The facts why Defendants do not prevail with respect to either of Plaintiffs' causes of action are not complicated. First, Defendants denied T.B.'s claims for residential mental health treatment he received at Waypoint Academy ("Waypoint") on the basis that Aetna requires residential mental health treatment facilities to have a behavioral health provider on-site 24-hours

1

a day, seven-days a week. Second, Plaintiffs' expert, Dr. Jeffrey Kovnick, opined that requiring a behavioral health provider to be on-site 24 hours a day, seven-days a week is not the generally accepted standard of care for residential mental health treatment facilities. Third, Defendants' expert, Dr. Andrew Mendonsa, and an authoritative third-party set of guidelines, the AACAP Principles, confirm Dr. Kovnick's opinion – Dr. Mendonsa opines that a 24/7 behavioral health provider is "best practices" (which is different from "generally accepted standards") and the AACAP Principles allow for either to occur. Fourth, and most importantly, Defendants' staffing requirements imposed on medical/surgical facilities that are analogous to residential mental health treatment facilities do not deviate from the generally accepted standards of practice.

Taken together, these establish that Aetna's requirement for residential mental health treatment facilities to have a behavioral health provider on-site 24-hours a day, seven-days a week violates the Mental Health Parity and Addiction Equity Act ("MHPAEA"). It is a staffing requirement above-and-beyond the generally accepted standards of practice, with even Defendants' own expert noting it reflects a "best practice" instead, that Defendants place on residential mental health treatment without placing a similarly restrictive "best practices" staffing requirement on analogous medical/surgical care. Because this discrepancy violates MHPAEA, Plaintiffs should prevail on their second cause of action.

Further, Defendants' motion for summary judgment makes it explicit that their *sole basis* for denying T.B.'s claims was their 24/7 behavioral health provider requirement. Because Aetna's 24/7 behavioral health provider requirement violates MHPAEA, their sole basis for denying benefits should be nullified by the Court. Accordingly, Plaintiffs should also prevail on their first cause of action for wrongful denial of benefits.

Despite this, Defendants argue that they are entitled to summary judgment because: (1) they contend that their "24/7 requirement is the same" for both residential treatment and skilled nursing facilities; (2) they contend Plaintiffs' MHPAEA claim is duplicative; and (3) Defendants contend that because their 24/7 behavioral health provider requirement is not above and beyond the generally accepted standards of practice for residential treatment facilities, they did not wrongfully deny benefits. These arguments fly in the face of the evidence available in the record, Dr. Kovnick's expert report, Dr. Mendonsa's expert report, and the AACAP Principles. Accordingly, the Court should not adopt Defendants' arguments and should deny Defendants' motion for summary judgment.

## RESTATEMENT OF RELEVANT FACTS

Plaintiffs reiterate the following relevant facts from their own motion for summary judgment. Plaintiffs take no issue with Defendants' statement of purportedly undisputed material facts but believe the Court should consider the following to contextualize its consideration.

*The Underlying Insurance Claims and Aetna's Denials*

1. T.B. was a beneficiary under the Deutsche Plan.[1]
2. T.B. was admitted to Waypoint Academy ("Waypoint"), a residential treatment facility, for mental health treatment.[2]

---

[1] *Compare* Second Amended Complaint, ECF Doc. No. 24-1 ¶ 4 *with* Defendants' Answer, ECF Doc. No. 27 ¶ 4.
[2] *See, e.g.,* Rec. 113 (reflecting T.B.'s treatment at Waypoint).

3

3. In various denial letters, Aetna indicated it denied coverage for T.B.'s treatment at Waypoint because "Mental Health Residential Treatment programs must have a behavioral health provider actively on duty 24 hours per day for 7 days a week."[3]

4. After exhausting their prelitigation appeal obligations, Plaintiffs filed this lawsuit contending that Aetna has violated the Mental Health Parity and Addiction Equity Act ("MHPAEA") by requiring residential treatment facilities to have a "behavioral health provider actively on duty 24 hours per day for 7 days a week."[4]

5. As part of that claim, Plaintiffs maintain that having a behavioral health provider on duty 24/7 is not the generally accepted standard of care for residential treatment facilities.[5]

6. The Plan evaluates whether treatment is medically necessary by, among other things, requiring it be "in accordance with generally accepted standards of medical practice…"[6]

*Dr. Mendonsa's Expert Report*

7. Defendants hired an expert, Dr. Andrew D. Mendonsa, Psy. D., MBA, to opine for this case.[7]

---

[3] *See* Rec. 2 (February 1, 2019 denial letter articulating this rationale for denying T.B.'s claims), Rec. 640 (July 26, 2019 denial letter articulating the same rationale), Rec. 883 (October 17, 2019 denial letter repeating this justification).
[4] *See generally* ECF Doc. No. 24-1.
[5] *See generally id*.
[6] Rec. 938.
[7] *See* Mendonsa Report, ECF Doc. No. 62-1.

4

8. Dr. Mendonsa reached the opinion that "it is best practices for [residential treatment facilities] to be staffed with a behavioral health practitioner 24-hours per day, seven days per week."[8]

9. Dr. Mendonsa also opined that some deference should be shown to "leading professional associations, such as the American Academy of Child and Adolescent Psychiatry (AACAP)."[9]

10. Dr. Mendonsa opined that "AACAP provided overarching principles for residential programs" to fill a "regulatory patchwork and lack of consistent regulations for residential treatment centers[.]"[10]

*Dr. Kovnick's Expert Report*

11. Plaintiffs hired an expert, Dr. Jeffrey A. Kovnick, M.D., to opine for this case.[11]

12. Dr. Kovnick opined that "[t]he generally accepted standards of medical practice for residential treatment centers (RTCs) throughout the country and in Utah, specifically, is that clinical providers be available 'on-call' 24 hours per day 7 days per week."[12]

13. Dr. Kovnick further opined "[t]he standard of care is NOT that a licensed behavioral health provider be actively *on-site* at the [residential treatment facility] 24 hours per day 7 days a week."[13]

//

//

---

[8] *See id.* at 5.
[9] *Id.* at 2.
[10] *Id.* at 3.
[11] *See* Kovnick Report, ECF Doc. No. 62-2.
[12] *Id.* at 2.
[13] *Id.*

5

*The AACAP Principles*

14. The American Academy of Child and Adolescent Psychiatry published "Principles of Care for Treatment of Children and Adolescents with Mental Illnesses in Residential Treatment Centers" (the "AACAP Principles") in June 2010.[14]

15. As Dr. Mendonsa opined, the AACAP Principles provide "overarching principles for residential programs[.]"[15]

16. The AACAP Principles call for residential staffing to be "consistent with the clinical care needs of the residents, with monitoring of the acuity of the individual so that the milieu and staff resources can responds to patient needs during all shifts."[16]

17. To this end, the AACAP Principles indicate that "[d]ay-to-day clinical leadership of a residential treatment center shall be provided by a professionally trained individual (at a masters or doctorate level) in a relevant mental health discipline" with "at least three years of clinical experience" who is "board certified in general psychiatry with extensive experience in the treatment of adolescents[.]"[17]

18. The AACAP Principles further provide that "[a] registered nurse with at least one year of experience in mental health services" or "a mental health worker (a person with bachelor's degree in psychology, social work, counseling, nursing education, rehabilitation counseling and at least one year of experience in mental health services) should provide 24 hour developmentally sensitive child supervision, leisure, and supportive care" but allows that "[a] person with a high school diploma and five years

---

[14] *See* AACAP Principles, ECF Doc. No. 62-3.
[15] ECF Doc. No. 62-1 at 3.
[16] ECF Doc. No. 62-3 at 3.
[17] *Id*. at 3.

6

experience in mental health services may also be a supervisor but on no more than one shift per day."[18]

19. The AACAP Principles call for registered nurses to be "on-site at least eight hours per day."[19]

20. Finally, as pertinent here, the AACAP Principles indicate that a "qualified primary care provider who is available 24 hours a day with hospital resources identified when necessary" should provide "medical care" to patients in a residential treatment facility.[20]

*Waypoint's Qualifications and Staffing*

21. At all times relevant to this lawsuit, Waypoint was licensed by the State of Utah to provide "residential treatment for [ ] youth clients ages 12 to 17."[21]

22. Waypoint was also accredited by the Joint Comission to provide residential Behavioral Health care.[22]

23. Waypoint had medical and behavioral health clinicians available on-call 24 hours a day, 7 days a week.[23]

*Aetna's Treatment of Medical/Surgical Analogues*

---

[18] *Id*.
[19] *Id*.
[20] *Id*. at 4.
[21] Rec. 93.
[22] *See* Rec. 109-110.
[23] *See* Rec. 60 (explaining this information).

7

24. Aetna does not impose limitations for coverage at skilled nursing, subacute inpatient rehabilitation, and inpatient hospice facilities that exceed the generally accepted standard of care for those facilities.[24]

**ARGUMENT**

**I. PLAINTIFFS HAVE ESTABLISHED THAT DEFENDANTS VIOLATED MHPAEA.**

In their own motion for summary judgment, Plaintiffs demonstrated that Defendants violated MHPAEA because they cover claims for skilled nursing, subacute inpatient rehabilitation, and inpatient hospice facility care if those facilities are operating "[i]n accordance with generally accepted standards of medical practice[.]"[25] Plaintiffs then established, based on the testimony of both Plaintiffs' expert, Dr. Kovnick and Defendants' expert, Dr. Mendonsa, that the generally accepted standards of medical practice for residential treatment facilities do not call for a behavioral health provider to be on-site 24-hours per day, seven-days per week.[26]

Instead, Dr. Mendonsa indicated that he believes "it is best practices for [residential treatment facilities] to be staffed with a behavioral health practitioner 24-hours per day, seven days per week."[27] Best practices, notably, are not the same thing as "generally accepted standards of care."[28] Dr. Kovnick's opinion supports and clarifies Dr. Mendonsa's: "[t]he

---

[24] *See* Rec. 938 (reflecting that, as a requirement for coverage, Aetna requires that a service be provided "[i]n accordance with generally accepted standards of medical practice"). Plaintiffs do not anticipate that Defendants will take the position that they administer claims for skilled nursing, subacute inpatient rehabilitation, or inpatient hospice facilities in a way that deviates from the plain terms of the Plan.
[25] Rec. 938 (the terms of the Plan reflecting this reality).
[26] *See* ECF Doc. No. 62 at 8-11.
[27] *See* ECF Doc. No. 62-1 at 5.
[28] *See, e.g., Somerville v. United States*, 2010 U.S. Dist. LEXIS 71969, *15 n. 9 (M.D. Fla. June 30, 2020) ("The Court disagrees with Plaintiff's contention that Dr. Coady deviated from the standard of care by not following 'best practices' guidelines. The standard of care is not equivalent to 'best practices.'"); *see also Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042, 1082 (D. Ariz. Aug. 25, 2021) (recognizing in the context of a negligence action that testimony

8

[generally accepted] standard of care is NOT that a licensed behavioral health provider be actively *on-site* at the [residential treatment facility] 24 hours per day 7 days a week."[29] The AACAP Principles support both Dr. Mendonsa and Dr. Kovnick's conclusions, because the AACAP Principles do not advise that a behavioral health provider should be on-site 24 hours a day 7 days a week at a residential treatment facility.[30] Instead, the AACAP Principles describe staffing requirements that allow for the standard Dr. Kovnick identified: 24/7 supervision, but with a behavioral health provider on-call as opposed to on-site.[31]

Combining this evidence with the Plan's clear representation that it does not stray from the generally accepted standards of medical practice when placing coverage requirements on medical/surgical facilities,[32] Plaintiffs have demonstrated that Defendants violate MHPAEA. Defendants place a "best practices" staffing requirement, above and beyond the generally accepted standards of medical practice, on coverage for residential mental health treatment. Defendants do not place any staffing requirements beyond the generally accepted standards of medical practice on coverage for analogous medical/surgical facilities – including but not limited to skilled nursing facilities. Accordingly, Defendants have violated MHPAEA and the Court should not award summary judgment to Defendants on Plaintiffs' second cause of action.

---

establishing "best practice" is "insufficient to establish the applicable standard of care"), *MCI Communications, Inc. v. Maverick Cutting & Breaking, LLC,* 374 F. Supp. 3d 789, 808 (D. Minn. 2019) ("[I]ndustry best practices are not industry standards of care. Indeed, industry best practices are aspirational, generally requiring a higher standard of care than the industry standard of care.").
[29] *Id.*
[30] *See generally* ECF Doc. No. 62-3.
[31] *See generally id.*
[32] *See* Rec. 938.

Defendants only advance a few arguments that are germane to this theory of MHPAEA liability,[33] none persuasive. First, Defendants argue that the Court should dismiss Plaintiffs' MHPAEA claim outright because they contend it is "merely a repackaged benefits claim," which they maintain is barred by federal law.[34] Defendants misapprehend the law. Instead, as a District of Utah court noted in *Heather E. v. Cal. Physicians' Servs.*:

> In *Varity Corp.*, the Supreme Court ruled that there will "likely be no need for further equitable relief" when a request for relief under 29 U.S.C. § 1132(a)(3) is already provided for by a claim asserted under 29 U.S.C. § 1132(a)(1). *Varity Corp.*, 516 U.S. at 513. But as recognized by the Second, Eighth, and Ninth Circuits, Varity Corp. only bars duplicative recovery; it does not require that alternative claims requesting similar relief be dismissed. *In New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) the Second Circuit noted that "it is important to distinguish between a cause of action and a remedy under § 502(a)(3)," recognized that "*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available," and ultimately concluded that because it was "is too early to tell if [the plaintiff's] claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B)," the district court had "prematurely dismissed [the plaintiff's] claims under § 502(a)(3) on the ground that § 502(a)(1)(B) provides [him] with adequate relief." The Eighth Circuit similarly

---

[33] In their brief, Defendants argue that Plaintiffs' alleged disparity is not an "as-applied" disparity but do not explain why that would absolve them of a MHPAEA violation (it would not). *See* ECF Doc. No. 63 at 23. Defendants also argue that inpatient rehabilitation and inpatient hospice care are not analogous to residential mental health treatment. *See* ECF Doc. No. 63 at 24-25. Defendants are wrong, *see Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1159 (9th Cir. 2018) (subacute inpatient rehabilitation facilities are analogous to residential mental health treatment facilities); *see also D.K. v. United Behavioral Health*, 2020 U.S. Dist. LEXIS 130545 at *7-8 (D. Utah 2020) (same with inpatient hospice care), but it does not matter because Plaintiffs have demonstrated Defendants violated MHPAEA with respect to their disparate treatment of skilled nursing facilities as well – an analogue Defendants recognize. Moreover, Defendants argue that the requirements they impose on residential mental health treatment are "quality control" requirements without advancing any cogent legal argument why labeling a MHPAEA disparity "quality control" makes it any less of a MHPAEA violation. *See* ECF Doc. No. 63 at 25. All of these arguments miss the point and Plaintiffs anticipate Defendants will revise or abandon them having had the benefit of Plaintiffs' own motion for summary judgment for clarification.
[34] *See* ECF Doc. No. 63 at 18-20.

> ruled that "[w]e do not read *Varity* . . . to stand for the proposition that [the plaintiff] may only plead one cause of action to seek recovery of his son's supplemental life insurance benefits" but instead concluded that the case prohibits "duplicate recoveries when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3)." *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (emphasis in original). The Ninth Circuit agreed with this approach, noting that it is "an accurate application . . . because it allows plaintiffs to plead alternate theories of relief without obtaining double recoveries." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), as amended on denial of reh'g and reh'g en banc (Aug. 18, 2016).[35]

Here, Defendants denied T.B.'s claims based on a Plan provision that plainly violates MHPAEA. Were Plaintiff to simply bring only a claim for wrongful denial of benefits, that claim would automatically fail because the Plan's plain language (which violates MHPAEA) denies coverage. This is not the scenario where Plaintiffs attempt to use MHPAEA to procure a double-recovery, or to pursue a the "recovery of … insurance benefits" that they maintain they are entitled to but could more easily obtain through a different cause of action.[36] Instead, this is a case where contesting Defendants' MHPAEA violation is the *sole* way Plaintiffs could obtain any relief. The Court should not join Defendants in concluding that MHPAEA violations are no longer redressable if they are grounded in Plan language that leads to a straightforward denial of coverage (thus prompting Defendants to argue all MHPAEA claims that could lead to benefits are just "repackaged claims for benefits").[37] That sort of ruling would frustrate justice and

---

[35] 2020 U.S. Dist. LEXIS 136467, *14-15 (D. Utah July 30, 2020).
[36] *Id*. at *15.
[37] *See Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1159 (9th Cir. 2018) (interpreting MHPAEA to provide that "a plan cannot allow room at board costs at a skilled nursing facility" while "denying [room and board costs] at a residential treatment facility[,]" recognizing that this MHPAEA violation was the sole reason for an ERISA administrator denying benefits, and electing to award benefits as a result); *see also generally id*. (recognizing that MHPAEA violation in the form of plan language leads to an equitable remedy that eventually leads to requiring payment of benefits).

11

provide a perverse incentive for Defendants to simply move any potential MHPAEA violations into the plan language of their plans on the logic that doing so would any and all litigation as a potential "double recovery."

Turning to Defendants' next argument, Defendants argue that Plaintiffs have no evidence that "the Plan's requirements for residential treatment facilities are not in keeping with generally accepted standards of medical practice."[38] Hogwash. Dr. Mendonsa's expert opinion, Dr. Kovnick's expert opinion, and the AACAP Principles all demonstrate that the Plan's requirements for residential treatment facilities are not in keeping with generally accepted standards of medical practice, as explained *supra*.

Next, Defendants argue that Plaintiffs have no evidence "that the additional requirements imposed on skilled nursing facilities (as the alleged medical/surgical analogue) were actually in keeping with generally accepted standards of medical practice."[39] Again, hogwash. The Plan itself states that Defendants cover claims for skilled nursing, subacute inpatient rehabilitation, and inpatient hospice facility care if those facilities are operating "[i]n accordance with generally accepted standards of medical practice[.]"[40] If Defendants intend to formally take the position in litigation that they violate the terms of the Plan by imposing coverage requirements on medical/surgical facilities that are above and beyond the generally standards of medical practice for those facilities, Plaintiffs invite them to do so.[41] Otherwise, the Plan's representation is all Plaintiffs need to establish conclusive evidence on that point.

---

[38] ECF Doc. No. 63 at 26.
[39] ECF Doc. No. 63 at 26.
[40] Rec. 938 (the terms of the Plan reflecting this reality).
[41] Should Defendants actually do this, Plaintiffs request a sur-reply to explain why Defendants' representation provides another basis for the Court to rule in Plaintiffs' favor on their wrongful denial of benefits cause of action.

12

Finally, Defendants argue that "what Plaintiffs assail are quality control requirements designed to improve mental health care, not limit it."[42] Defendants marshal no case law, and Plaintiffs are aware of none, providing that everything is hunky-dory if Defendants apply more stringent limitations on coverage for residential mental health treatment than they do on analogous medical/surgical analogues but label that practice "quality control" as opposed to "flagrantly violating MHPAEA."[43] MHPAEA charges Defendants not to limit coverage for mental health treatment more than they do for analogous medical/surgical care. Imposing a "best practices" staffing requirement on residential mental health treatment while not doing the same for analogous medical/surgical care is a more stringent limitation on the former than the latter. Calling the MHPAEA violation "quality control" changes that analysis not one wit.

Because the evidence clearly establishes that Defendants have violated MHPAEA, the Court should not award summary judgment to Defendants on their second cause of action.

## II. BECAUSE AETNA'S SOLE REASON FOR DENYING T.B.'S CLAIMS VIOLATED MHPAEA, THE COURT SHOULD REVERSE AETNA'S DENIALS AND AWARD BENEFITS.

Aetna's sole reason for denying T.B.'s claims for the treatment he received at Waypoint was a staffing requirement that violated MHPAEA.[44] In addition to violating MHPAEA, Aetna's denial rationale also violated the terms of the Plan, which indicate that coverage is provided for facilities that meet the generally accepted standards of medical practice.[45] Accordingly, if the Court finds that Aetna's staffing requirement for residential treatment facilities violated MHPAEA, it should also find that the same requirement violated the plain terms of the Plan and

---

[42] ECF Doc. No. 63 at 26.
[43] *See generally* ECF Doc. No. 63 (providing no case law to that effect).
[44] *See* Argument § I, *supra*.
[45] *See* Rec. 938.

should overturn Aetna's denials and should deny Defendants' motion for summary judgment as to Plaintiffs' first cause of action.[46]

Defendants' motion expends six pages arguing that they deserve to prevail on Plaintiffs' first cause of action, but contains no authority indicating that benefit denials solely based on a Plan requirement that violates MHPAEA can still be upheld on summary judgment.[47] Plaintiffs are not aware of any authority that would support such an unjust conclusion. Perhaps Defendants will marshal evidence to that effect in their opposition, but in the meantime, the Court should hold that Defendants wrongfully denied T.B.'s claims when they relied entirely on a Plan requirement that violated MHPAEA, and so should not award summary judgment to Defendants on Plaintiffs' first cause of action.

## CONCLUSION

For the foregoing reasons, the Court should award summary judgment to Plaintiffs.

DATED this 6th day of September, 2024.

/s/ Brian S. King
Attorney for Plaintiffs

---

[46] *See, e.g., See Danny P. v. Catholic Health Initiatives*, 891 F.3d 1157-60 (9th Cir. 2018) (recognizing that MHPAEA violation in the form of plan language leads to an equitable remedy that eventually leads to requiring payment of benefits).
[47] *See* ECF Doc. No. 65 at 12-18.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent to all parties registered to receive court notices via the Court's CM/ECF system.

DATED this 6th day of September, 2024.

/s/ Brian S. King